

**ROBERT C. JAROSH, #6-3497**
Hirst Applegate, LLP
1720 Carey Avenue, Suite 400 (82001)
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
rjarosh@hirstapplegate.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 APR -6 PM 3:57

STEPHAN HARRIS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| GREAT AMERICAN ASSURANCE COMPANY AND GREAT AMERICAN ALLIANCE COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> INTERSTATE FIRE & CASUALTY COMPANY, FIREMAN'S FUND INSURANCE COMPANY AND APARTMENT MANAGEMENT CONSULTANTS, <br><br> Defendants. | Civil No. 16-cv-65-J |

## *COMPLAINT FOR DECLARATORY RELIEF*

Plaintiffs, Great American Assurance Company and Great American Alliance Company (collectively referred to herein as "Great American") hereby make their Complaint against Interstate Fire & Casualty Company, Fireman's Fund Insurance Company and Apartment Management Consultants and allege as follows:

## PARTIES

1. Great American Assurance Company is an Ohio company, with its principal place of business in Cincinnati, Ohio.

2. Great American Alliance Company is an Ohio company, with its principal place of business in Cincinnati, Ohio.

3. Upon information and belief, Interstate Fire and Casualty Company ("Interstate") is an Illinois company and maintains its executive offices in Chicago, Illinois.

4. Upon information and belief, Fireman's Fund Insurance Company ("Fireman's Fund") is a California company, with its principal place of business in Novato, California.

5. Upon information and belief, Apartment Management Consultants, LLC ("AMC") is a Utah company with its principal place of business in Cottonwood Heights, UT, and all of its members are citizens of UT. AMC is an interested and proper party pursuant to Fed. R. Civ. P. 19 and Fed. R. Civ. P. 57 with respect to the issues in this action.

## JURISDICTION AND VENUE

6. This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

7. An actual justiciable controversy exists between Great American, Interstate, Fireman's Fund and AMC within the meaning of 28 U.S.C. § 2201 regarding insurance coverage provided under the Great American, Interstate and Fireman's fund policies, as more particularly described below.

8. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the suit is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. At issue is whether Great American is entitled to relief from a supersedeas bond in the amount of $6,011,629.00 it posted for a portion of the punitive damages judgment against AMC in the matter entitled: *Lompe v. Sunridge Partners, LLC, et al.*, United States District Court for the District of Wyoming, Civil Action No. 12-cv-00088 (the "*Lompe* action"), and whether Interstate and Fireman's Fund should be ordered to file a supersedeas bond in place of the bond posted by Great American.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to this action occurred in this District.

## GENERAL ALLEGATIONS

**The *Lompe* Action**

10. On or about May 2, 2012, Amber Lompe filed her complaint in the *Lompe* action seeking damages for injuries she incurred when she was poisoned by carbon monoxide gas inside her apartment in Casper, Wyoming. Sunridge Partners, LLC owned the Sunridge Apartments where Ms. Lompe was a tenant. AMC operated and managed the Sunridge Apartments.

11. Ms. Lompe alleged that she was poisoned on February 1, 2011 as a result of AMC's and Sunridge's negligent, grossly negligent and willful and wanton acts. Ms. Lompe sought both compensatory and punitive damages from AMC and Sunridge.

12. Commencing on December 2, 2013, the *Lompe* action was tried to a jury.

13. On December 19, 2013, the jury in the *Lompe* action delivered a verdict finding Sunridge, AMC and Ms. Lompe negligent. The jury attributed fault to the parties as follows: Sunridge 25% at fault; AMC 65% at fault; and Ms. Lompe 10% at fault. The jury awarded a total of $3,000,000 in compensatory damages. The jury also found that the conduct of both Sunridge and AMC constituted "willful and wanton misconduct".

14. On December 20, 2013, after the punitive damages portion of the *Lompe* action, the jury returned a verdict that awarded Ms. Lompe $3,000,000.00 in punitive damages against Sunridge, and $22,500,000 in punitive damages against AMC.

15. Judgment was entered for Ms. Lompe to recover compensatory damages from AMC in the sum of $1,950,000, and punitive damages in the sum of $22,500,000, plus post-judgment interest thereon at the statutory rate of 0.14% from the date of entry of judgment, pursuant to 28 U.S.C. § 1961.

16. On November 4, 2014 the court in the *Lompe* action stayed execution of the compensatory and punitive judgment against AMC pending resolution of AMC's appeal, based upon the posting of (1) a bond from AMC's primary insurer, Interstate, in the allocated amount of $2,035,000 as security for the compensatory damage award and interest against AMC; (2) a bond from Great American for $6,011,629.00 as security for a portion of the $22,500,000 punitive damage judgment against AMC; and (3) $16,500,000 deposited into a joint escrow account controlled by AMC and Ms. Lompe's escrow agent, Zions Bank.

17. On November 17, 2014, AMC filed its Notice of Appeal appealing the punitive damages award in the *Lompe* action.

18.   On April 1, 2016, the Tenth Circuit Court of Appeals issued a decision vacating the punitive damages award against Sunridge and reducing the punitive damages award against AMC from $22,500,000 to $1,950,000.

**The Insurance Policies**

19.   Upon information and belief, Interstate issued a Commercial General Liability insurance policy to Commercial Industrial Building Owner's Alliance, Inc. d/b/a CIBA ("CIBA"), policy number SGL 1002220 for a two-year term, from March 31, 2012 to March 31, 2012 (the "Interstate Primary Policy"). The Interstate Primary Policy has a limit of $1,000,000 per occurrence and a $2,000,000 general aggregate limit.

20.   Upon information and belief, the Interstate Primary Policy contains a "Named Insured Endorsement" identifying CIBA as a named insured, as well as any associate of CIBA "to whom an Evidence or a Certificate of Insurance has been issued and which describes the specific location coverage is limited to."

21.   CIBA issued Certificates of Insurance to Sunridge and AMC, identifying them as named insureds under the Interstate Primary Policy.

22.   Upon information and belief, Interstate issued an Excess Liability Policy to CIBA, policy number PFX73097172 for a two-year term, from March 31, 2010 to March 31, 2012, with a limit of $10,000,000 per occurrence, with a $10,000,000 aggregate for the policy term (the "Interstate Excess Policy"). The Interstate Excess Policy is excess to the Interstate Primary Policy.

23.   Upon information and belief, the Interstate Excess Policy contains a "Named Insured Endorsement" identifying CIBA as a named insured, as well as any associate of

CIBA "to whom an Evidence or a Certificate of Insurance has been issued and which describes the specific location coverage is limited to."

24. Sunridge and AMC are considered named insureds under the Interstate Excess Policy.

25. Upon information and belief, Fireman's fund issued an Excess Liability Policy to "CIBA, et al as per First Underlying Insurance," policy number SHX-000-7262-3879 for a two-year term, from March 31, 2010 to March 31, 2012, with a limit of $15,000,000 per occurrence, with a $15,000,000 aggregate for the policy term ("Fireman's Fund Excess Policy"). The "First Underlying Insurance" in the Fireman's Fund Excess Policy is the Interstate Excess Policy.

26. Sunridge and AMC are considered named insureds under the Fireman's Fund Excess Policy.

27. Great American Assurance Company issued a commercial general liability policy to AMC, policy number MAC 785-76-47-02 for the policy period of February 28, 2010 to February 28, 2011 (the "Great American Primary Policy"). The Great American Primary Policy has occurrence limits of $1,000,000 and a $2,000,000 aggregate limit. Sunridge is not an insured under the Great American Primary Policy.

28. The Great American Primary Policy included an endorsement entitled "Real Estate Property Managed." That endorsement states, in part, that "[w]ith respect to your liability arising out of your management of property for which you are acting as a real estate manager this insurance is excess over any other valid and collectible insurance available to you."

29. Great American Alliance Company issued an umbrella policy to AMC, policy number UMB 7-85-65-48-02 for the policy period of February 28, 2010 to February 28, 2011 (the "Great American Umbrella Policy"). The Great American Umbrella Policy has limits of $5,000,000 each occurrence and a $5,000,000 aggregate. Sunridge is not an insured under the Great American Umbrella Policy.

30. The Great American Umbrella Policy provides, in part, that Great American Alliance "will pay on behalf of the 'Insured' those sums in excess of the 'Retained Limit' that the 'Insured' becomes legally obligated to pay by reason of liability imposed by law. . . ." The term "Retained Limit" is defined, in part, as: "the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the 'Insured' during the Policy Period."

**AMC's Tender of the *Lompe* Action and Defense of Same**

31. AMC first advised Great American of Ms. Lompe's claim in March 2011. After investigation of the claim, Great American tendered the defense and indemnification of the claim against AMC to Sunridge pursuant to the terms of a management agreement between Sunridge and AMC.

32. AMC and Sunridge tendered the defense of the *Lompe* Action to Interstate and Fireman's Fund.

33. AMC and Sunridge assert that Interstate and Fireman's Fund accepted the tender of defense of the *Lompe* action without reserving rights to deny or disclaim coverage under the Interstate Primary Policy, Interstate Excess Policy or Fireman's Fund Excess Policy.

Specifically, AMC and Sunridge asserted that Interstate and Fireman's Fund failed to reserve rights to deny coverage for punitive damages based on a punitive damages exclusion and, thus, were estopped from denying coverage for the punitive damages awarded in the *Lompe* action.

34. AMC and Sunridge also assert that, prior to the trial of the *Lompe* action, a clear and unequivocal offer to settle the action for the available limits of the Interstate Primary Policy was made to AMC and Sunridge and communicated to Interstate and Fireman's Fund. AMC and Sunridge demanded that Interstate and Fireman's Fund accept the offer. Interstate and Fireman's Fund refused to accept the offer to settle.

35. Counsel hired by Interstate and Fireman's Fund to defend AMC and Sunridge filed a motion for summary judgment in the *Lompe* action which sought, among other things, a dismissal of the punitive damages claim. The motion was denied.

36. AMC and Sunridge assert that Interstate and Fireman's Fund did not raise the exclusion in their policies for punitive damages as a potential defense to coverage until after the court denied the motion for summary judgment.

37. After the verdict in the *Lompe* action, Interstate and Fireman's Fund refused to post a bond to cover the punitive damages award against AMC. Accordingly, AMC asked Great American to post a supersedeas bond for the punitive damage award against AMC.

38. Great American offered to post a supersedeas bond on behalf of AMC in connection with the *Lompe* action, in the amount of the combined Great American Primary Policy and Great American Umbrella Policy limits of insurance of $6,000,000.00, plus $11,629.00 representing interest on the judgment at the rate set by the Court from the date of entry of judgment against AMC to April 28, 2014 (the "Great American Bond"). In exchange

for the Great American Bond, AMC agreed to assign, transfer, convey and deliver to Great American all rights, claims, title and interest which it may have to recover all or part of any payment Great American has made or makes under the Great American Primary Policy and Great American Umbrella Policy against any other person or entity, including but not limited to Interstate and Fireman's Fund.

**The Interstate Coverage Action against AMC and Sunridge**

39. Interstate and Fireman's Fund initiated a declaratory judgment action against AMC and Sunridge in the United States District Court for the District of Wyoming, Civil No. 13-CV-278J on or about December 23, 2013 (the "Interstate Coverage Action"). The Interstate Coverage Action sought a declaration that neither Interstate nor Fireman's Fund have a coverage obligation for the punitive damages award in the *Lompe* action. AMC and Sunridge filed a counterclaim against Interstate and Fireman's Fund alleging breach of contract, breach of the implied covenant of good faith and fair dealing and seeking a declaratory judgment.

40. In the Interstate Coverage Action, AMC and Sunridge brought a motion for summary judgment asking that the court issue a declaration that Interstate and Fireman's Fund were estopped from denying coverage for the punitive damages claims asserted against them in the *Lompe* action. By order filed September 1, 2015, the court granted AMC and Sunridge's motion and held that Interstate and Fireman's Fund were precluded from raising the punitive damages exclusion as a means of avoiding or denying indemnity. The court held that Interstate, under the Interstate Primary Policy, must provide coverage and indemnification for sums that AMC and Sunridge are legally obligated to pay. The court further held that once the policy limits of the Interstate Primary Policy have been exhausted, the Interstate Excess Policy

and Fireman's Fund Excess Policy obligations are triggered and must provide the agreed-upon excess liability coverage.

## COUNT I:

## DECLARATORY JUDGMENT

41. Great American hereby incorporates and realleges the allegations in Paragraphs 1 - 40 as if fully set forth herein.

42. There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Great American and Interstate and Fireman's Fund concerning whether Great American should be relieved from the supersedeas bond it posted on behalf of AMC in the *Lompe* Action, and that Interstate and Fireman's Fund be obligated to substitute a bond in place of the Great American supersedeas bond.

43. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 through 2202, Great American in good faith requests that the Court declare the following:

    a. That the Great American Alliance Policy and Great American Assurance Policy are excess to the Interstate Primary Policy, the Interstate Excess Policy and the Fireman's Fund Policy, as those policies are identified herein.

    b. That pursuant to the court's order of September 1, 2015 in the *Interstate Coverage Action*, Interstate and Fireman's Fund are obligated to provide coverage for both the compensatory and punitive damages awarded against AMC in the *Lompe* action and, as a result, Great American should be relieved from the supersedeas bond it posted on behalf of AMC in the

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

*Lompe* action, and that Interstate and Fireman's Fund are obligated to substitute a supersedeas bond in place of the Great American Bond.

## PRAYER FOR RELIEF

WHEREFORE, Great American demands judgment as follows:

1. Declaring that the Great American Alliance Policy and Great American Assurance Policy are excess to the Interstate Primary Policy, the Interstate Excess Policy, and the Fireman's Fund Policy, as those policies are identified herein.

2. Declaring Great American should be relieved from the supersedeas bond it posted on behalf of AMC in the *Lompe* action;

3. Declaring that Interstate and Fireman's Fund are obligated to substitute a supersedeas bond in place of the Great American Bond.

4. For such other and further relief as this Court deems just and proper.

Dated: 6 April 2016.

        GREAT AMERICAN ASSURANCE COMPANY
        AND GREAT AMERICAN ALLIANCE
        COMPANY, Plaintiffs

BY: _____
        ROBERT C. JAROSH, #3497
        OF HIRST APPLEGATE, LLP
        Attorneys for Plaintiffs
        1720 Carey Avenue, Suite 400 (82001)
        P. O. Box 1083
        Cheyenne, WY 82003-1083
        Phone: (307) 632-0541
        Fax: (307) 632-4999
        rjarosh@hirstapplegate.com